IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| R AND R NAVIGATOR LLC,<br>*Plaintiff*<br><br>-vs-<br><br>WRIGHT NATIONAL FLOOD<br>INSURANCE COMPANY,<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  SA-22-CV-00764-XR |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant Wright National Flood Insurance Company's motion for summary judgment (ECF No. 22), Plaintiff R and R Navigator LLC's response (ECF No. 23), and Defendant's reply (ECF No. 24). After careful consideration, the Court issues the following order.

I.    **Factual Background**[1]

Plaintiff R and R Navigator LLC owns property located at 5616 Bandera Road in San Antonio, Texas (the "Property"), which was insured under a Standard Flood Insurance Policy ("SFIP")[2] issued by Defendant Wright National Flood Insurance Company ("Wright"). ECF No. 22 at 4. The policy was in effect from February 3, 2021, to February 3, 2022, and provided policy limits of $500,000.00, subject to a $5,000.00 deductible for Coverage A (Building), and policy

---

[1] Because Plaintiff stipulated (*see* ECF No. 23 at 1) to the "Summary of Relevant Facts" section in Defendant's motion for summary judgment (ECF No. 22-1), the Court will look to that section to establish the relevant facts.

[2] Plaintiff asserted in its first amended complaint that its insurance policy number was 42 1151605535. ECF No. 18 at 2. Defendant clarified in its answer and the "Summary of Relevant Facts" section in its motion for summary judgment, however, that Plaintiff had two policies for two separate buildings on the Property—one with a policy number of 42 1151605535 03 ("5535 Policy") and the other with a policy number 42 1151577479 03 ("7479 Policy")—and that its claims arise under the 7479 Policy only. ECF No. 20 at 3; ECF No. 22-1 at 1. Because Plaintiff stipulated to Defendant's "Summary of Relevant Facts," the Court will assume that Plaintiff's claim stems from the 7479 Policy. *See* ECF No. 23 at 1.

limits of $52,500.00, subject to a $5,000.00 deductible for Coverage B (Contents). ECF No. 22-1 at 2, 5. On July 5, 2021, the Property experienced flood damage. *Id*. at 5. The next day, Plaintiff filed a claim for flood damage with Defendant. *Id*. Plaintiff alleges that the flood caused significant damage to both the exterior and interior of the Property. ECF No. 18 at 2.

Following its receipt of the claim, Defendant sent an independent adjusting company to inspect the Property and estimate damages. ECF No. 22-1 at 2. After accounting for depreciation and the applicable deductibles, the adjuster estimated damages under Coverage A (Building) in the amount of $171,228.66 and damages under Coverage B (Contents) at the maximum limit of $52,500.00, for a total of $223,728.66. *Id*. On August 28, 2021, days before the 60-day proof of loss deadline expired on September 3, 2021, the adjuster promptly submitted a proof of loss, signed and sworn by Plaintiff, for a "Net Amount Claimed" of $223,728.66. *Id*. To date, this is the only proof of loss Defendant has received from Plaintiff.[3] Defendant subsequently sent Plaintiff payments totaling $223,728.66. *See* ECF No. 22-8.

Plaintiff filed its original complaint challenging the payment decision on July 18, 2022, alleging claims for breach of contract and a number of extra-contractual claims, including bad faith, fraud, and violations of Texas Insurance Code and the Texas Deceptive Trade Practices Act. ECF No. 1. After Wright moved to dismiss Plaintiff's extra-contractual claims as preempted by federal law (ECF No. 3), Plaintiff filed its first and second amended complaints (ECF Nos. 17, 18), alleging a single claim against Wright for breach of contract for "refusing to pay the full amount of the cost to repair or replace the property." ECF No. 18 at 3–4.

---

[3] Although one of Plaintiff's members, Inna Ramos, testified that in addition to signing the August 2021 proof of loss, she may have signed another proof of loss completed by a building consultant from BNRB Construction, she could not produce a second proof of loss ECF No. 22 at 5–6; ECF No. 22-10 at 11. Moreover, Plaintiff does not appear to argue in its summary judgment briefing that it submitted a second proof of loss to Defendant. Instead, it argues that sending an additional proof of loss "would have been moot." ECF No. 23 at 4.

Defendant now moves for summary judgment on Plaintiff's breach-of-contract claim, arguing that the SFIP requires the submission of an additional proof of loss when an insured seeks an amount that differs from a previously submitted proof of loss. ECF No. 22. In response, Plaintiff asserts that because a San Antonio City Code provision requires the Property to be elevated and rebuilt with flood-proof materials rather than merely repaired, Defendant should have used the "policy's replacement cost limits" instead of the actual cash value of the damage in paying Plaintiff under the policy. ECF No. 23 at 3.

**II.     Background on the National Flood Insurance Program ("NFIP"):**

Congress created the NFIP pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001, *et seq*. The Federal Emergency Management Agency ("FEMA") is charged with overseeing and implementing the NFIP and with promulgating regulations "for general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage." 42 U.S.C. § 4013. The regulations also prescribe the methods by which approved losses under the NFIP may be adjusted and paid. 42 U.S.C. § 4019. Under FEMA regulations, "all policies issued under the NFIP must be issued using the terms and conditions of the [SFIP] found in 44 C.F.R. Part 61, Appendix A." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 599 (4th Cir. 2002) (citing 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c)).

In 1983, under the WYO Program, the Administrator of FEMA authorized the SFIP to be issued by private insurance companies such as Wright, known as "WYO Program carriers." 42 U.S.C. § 4071(a)(1). WYO Program carriers issuing flood insurance under the NFIP arrange for the adjustment, settlement, payment, and defense of all claims arising from the policy. 44 C.F.R. § 62.23(d). Congress underwrites all operations of the NFIP, including claims adjustment, through United States Treasury funds. 42 U.S.C. § 4017(d)(1). The federal government pays all flood

insurance claims and reimburses WYO Program carriers their costs, including defense costs, for the adjustment and payment of claims. *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 402 (5th Cir. 2012) (citing *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009)).

Federal law governs the interpretation of the provisions of the SFIP. Article IX of the SFIP provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq.*), and Federal common law.

44 C.F.R. pt. 61, app. A(2), art. IX. As the Fifth Circuit has stated:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978). Thus, lawsuits involving SFIPs inherently implicate federal law.

## DISCUSSION

### I.   Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841,

847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary

5

judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.     Analysis**

The SFIP requires the named insured of a property with flood loss to "[w]ithin 60 days after the loss, send [the insurer] a proof of loss." 44 C.F.R. Pt. 61, app. A(2), art. VII(G.4).[4] The SFIP describes the mandatory components of a proof of loss:

> [The named insured's] statement of the amount [they] are claiming under the policy signed and sworn to by [the insured], and which furnishes [the insurer] with the following information:
> 
> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. [The named insured's] interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the insured property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described in G.3 above.[5]

*Id*. An insured's failure to include all of the required information in their proof of loss bars them from being able to bring suit. *See id*. art. VII(O) (The insured "may not sue [the insurer] to recover

---

[4] Defendant cites to the 2020 version of Appendix A(2) (which was effective starting in 2011) instead of the most current version. *See* ECF No. 22 n.4. Because the substance of the relevant section is the same in both the version cited by Defendant and the current version, the Court will cite to the most recent version of Appendix A(2). The only difference between the relevant portions of the two versions is that the "Requirements in Case of Loss" provision appears under subsection "J" in the 2020 version, while the updated version appears under subsection "G." *See* 44 C.F.R. Pt. 61, app. A(2), art. VII(G) (2021) and *id*. art. VII(J) (2011).

[5] G.3 describes the inventory of damaged property to include a showing of "the quantity, description, actual cash value, and amount of loss." 44 C.F.R. Pt. 61, app. A(2), art. VII(G.3).

6

money . . . unless [the insured] has complied with all the requirements of the policy."); *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 532 (5th Cir. 2015) ("The regulations make strict compliance with the proof-of-loss requirement a condition precedent to suit."). Thus, "an insured's failure to provide a complete, sworn proof of loss statement . . . relieves the federal insurer's obligation to pay what otherwise might be a valid claim." *Ferraro*, 796 F.3d at 532 (citing *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998)).

Neither party disputes that Plaintiff signed a valid proof of loss on August 28, 2021. ECF No. 22 at 5. Nor do they dispute that, to date, the August 2021 proof of loss is the only proof of loss Plaintiff has submitted to Defendant. *Id*. at 6. Accordingly, Defendant argues that summary judgment should be granted because the Fifth Circuit has interpreted SFIPs to require insured property owners to file an additional proof of loss when seeking additional monetary relief for the same claim. *Id*. at 10. Plaintiff contends that there is a dispute as to whether Plaintiff was required to submit a second proof of loss by the policy or by a statute.[6] ECF No. 23 at 2–3. The Court agrees with Defendant that the dispute described by Plaintiff is a question of law that has been settled by the Fifth Circuit.

The Fifth Circuit directly addressed the question of whether "an insured must submit an additional proof of loss to recover an additional amount on a preexisting claim" in *Ferraro*. 796 F.3d at 532. In that case, the plaintiffs' initial proof of loss explicitly stated that a supplement would be sent at a later date. *Id*. at 530. Shortly thereafter, the plaintiffs submitted a report by a public adjuster indicating that their loss was higher than the loss specified in their initial proof of

---

[6] Although Plaintiff stipulated to the "Summary of Relevant Facts" in Defendant's motion for summary judgment, Plaintiff categorizes this dispute as "a genuine dispute of material fact." Because the SFIP is a contract (*see* 44 C.F.R. Pt. 61, app. A(2), art. II(C.21)) and the interpretation of contracts is a question of law, this dispute is also a matter of law. *See Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021) (quoting *McLane Foodservice, Inc. v. Table Rock Rest., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013) ("The interpretation of a contract . . . is a question of law").

loss. *Id*. The plaintiffs were then told by one of the insurer's adjusters that it was not necessary to submit any additional forms to support their claims. *Id*. Nonetheless, the Fifth Circuit held that the note on the initial proof of loss and subsequent public adjuster report was insufficient to satisfy the demands of the SFIP, concluding that "a second proof of loss was necessary for the [Plaintiffs] to perfect their claim." *Id*. at 534.

Unlike the plaintiffs in *Ferraro*, Plaintiff in this case did not suggest that it intended to supplement its proof of loss, nor was Plaintiff told that submitting additional documentation was unnecessary. Even with more favorable facts than the present case, the Fifth Circuit found the *Ferraro* plaintiffs' claim invalid because they failed to submit a second proof of loss. *Id*. at 534; *see also Cummings v. Fid. Nat'l Indem. Ins. Co.*, 636 F. App'x 221, 223–24 (5th Cir. 2016) (reversing district court's award of $25,000 against WYO carrier for contents loss where insured failed to submit a signed proof of loss for damage to the contents); *Constr. Funding, L.L.C. v. Fidelity Nat'l Indem. Ins. Co.*, 636 F. App'x 207, 210 (5th Cir. 2016) (affirming award of summary judgment to WYO carrier where insured failed to submit a proof of loss complying with all SFIP requirements; the Fifth Circuit explained that "substantial compliance with the SFIP is not enough to meet the compliance requirement of Article VII(R)" and "[the insured's] failure to substantiate and justify the amount of its claim is a failure to comply with Article VII(J) of the SFIP"). Accordingly, because Plaintiff failed to submit an additional proof of loss, the Court concludes that Plaintiff's claim for breach of contract is similarly invalid.

In its response to Defendant's motion for summary judgment, Plaintiff argues that another proof of loss would be repetitive and unnecessary because the statutorily required information is already included in Plaintiff's original proof of loss. ECF No. 23 at 4. Unlike the plaintiffs in *Ferraro*, who sought additional damages stemming from a public adjustor's estimate, Plaintiff

8

seeks "the policy's replacement cost limits," which was already included on the proof of loss.[7] *Id.* at 3. Plaintiff acknowledges that "[t]he flood waters did not destroy the entire building," but "only damaged the items listed on the original inventory [attached to the proof of loss," which listed "[t]he actual cash value of those damaged items[.]" *Id.* Nonetheless, Plaintiff contends that the Court should look to the "replacement cost" of the Property under the SFIP because San Antonio City Code provisions dictated that the insured Property could not be repaired, but instead had to be elevated and rebuilt with flood-proof materials. *See id.* at 4 (asking that the Court take judicial notice of the San Antonio, Texas Unified Development Code, Appendix F, Subdivision D, Section 35-F142); *see* ECF No. 23-1.

Plaintiff's argument that the requirements of the San Antonio City Code mandate an award of replacement costs under the SFIP is contrary to the SFIP itself. To begin, the SFIP states that insurers will pay "the least" of either the "applicable amount of insurance under [the] policy," the "actual cash value," or the "amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss." 44 C.F.R. Pt. 61, app. A(2), art. VII(R). Because the actual cash value is less than the "policy's replacement cost limits," the actual cash value is the maximum award to which Plaintiff is entitled under the SFIP. Indeed, Plaintiff agreed to use the actual cash value by signing the proof of loss, which indicated a "Net Amount Claimed" of $223,738.66. *See* ECF No. 22-7. Thus, any award exceeding the value submitted by Plaintiff on its proof of loss would be improper. The Court further observes that the SFIP specifically states that the policy does *not* cover "[t]he cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris." 44 C.F.R. Pt. 61, app. A(2), art. V(A.6).

---

[7] The Court assumes that Plaintiff's reference to the "policy's replacement cost limits" means the "Full Cost of Repair or Replacement" stated on the proof of loss, which amounts to $298,297.96. *See* ECF No. 22-7.

While the SFIP offers specific coverage for the costs of compliance with state and local laws under Coverage D, 44 C.F.R. Pt. 61, app. A(2), art. III(D), it is undisputed =that Plaintiff only purchased "Coverage A" and "Coverage B," neither of which covers the cost of compliance. ECF No. 22 at 5; ECF No. 22-3 at 1 (noting coverage of only the building and its contents). Thus, Plaintiff is barred from seeking additional funds to cover the cost of compliance with a city ordinance.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 22) is **GRANTED**. Plaintiff shall take nothing by its claim against Defendant, and Plaintiff's claim is **DISMISSED WITH PREJUDICE**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 4th day of August, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE